```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x
UNITED STATES OF AMERICA              :
                                      :
        -against-                     :
                                      :
AMOS HARRIS and RUNEY MAH,            :
RUNEY MAH,                            :    10 Cr. 261
                                      :       (RRM)
                 Defendant            :
                                      :
---------------------------------------x
```

DEFENDANT MAH'S REPLY TO THE GOVERNMENT'S
OPPOSITION TO DEFENDANT'S PRE-TRIAL MOTIONS

```
                              LAWRENCE MARK STERN
                              100 Hudson Street #6A
                              New York, New York 10013
                              (212) 925-6863
                              Attorney for Defendant
                              Runey Mah
```

ARGUMENT

POINT I

THE GOVERNMENT'S ARGUMENTS FOR SUSTAINING
THE PROSECUTION OF DEFENDANT'S POSSESSION
OF THE BLOCK OF BLACK PAPER ARE
UNSUPPORTED AND CONTRARY TO THE STATUTE,
CASES, AND LEGISLATIVE INTENT

Without support in the text, case law, or legislative history, and by adding language to 18 U.S.C.§514(a)(2), the government parses it into two artificial parts in order to support a dragnet application of the statute. The government claims that the statute penalizes possession of two different things, fictitious instruments that appear, represent, and purport to be actual financial instruments, and other things that contrive to be so through scheme or artifice. The former would cover instruments that look like financial instruments, and the latter would cover anything "to be treated as a financial instrument", whether it looks like one or not. (Gov't. Response at 11).

Under this parsed, amended version of the statute, possession of anything, like the block of black paper in this case, or a piece of wood from the Brooklyn Bridge, or a piece of paper with a "portrait of a dog smoking a cigarette" *(United States v. Howick*, 263 F.3d 1056, 1068

(9th Cir. 2001)), would be a crime "because of the manner in which they are used." Gov't. Response at 10.

The statute does not say this. It does not penalize two different kinds of instruments or items, only those that appear in different ways to be actual financial instruments. The text of the statute describes "appearing, representing, purporting or contriving through scheme or artifice" as the characteristics of the instruments, the different ways they might look like actual financial instruments. Although the government wants the Court to read "appearing, representing, purporting" to be one category separate from another category of "contriving by scheme or artifice", there is no such schism in the text.

The government does not explain how it decides to break up the series at that point, rather than among each of the words, "appearing", "representing" and "purporting", each of which could also require separate individual categorizations. The text runs these and the word "contriving" together in series, and there is no justification in the text for deciding that the first three characteristics form one category separate from the final one regarding the appearance of actuality.

The statute's words are descriptive characteristics of the penalized instruments which, in one way or another, appear to be actual, including by appearances, by representation, and by contrivance. They are characteristics of the instruments as possessed and presented, not "of the manner in which they are used" (Gov't. Response at 10) or "treated." Gov't. Response at 11. The statute does not penalize the act of "treating" something as a financial instrument; it penalizes the possession, offering, or presentation of an instrument or item that on its face already appears or contrives to be a financial instrument. The word "contrives" refers to the instrument, not to any act of the possessor.

The items in *United States v. Howick, supra* and *United States v. Anderson*, 353 F.3d 490 (6th Cir. 2003) were certainly "treated" by the defendants as actual financial instruments, therefore if such treatment were all that was necessary to constitute guilt under §514(a)(2), the Courts' analyses of the appearances of the items in those cases would have been unnecessary. The minimum threshold of the appearance of legitimacy was, however, the whole issue. The government would write out of the statute entirely, under

the contrivance phrase, any requirement of the appearance of the instrument itself, but the Courts in *Howick* and *Anderson* would not do so, and there is no support for such a drastic revision of the statute in the legislative history.

The government is incorrect that *Howick* addressed only the so-called separate category of "appearing, representing and purporting", without taking into account the "contriving" category. The Court stated in *Howick* that the kind of financial obligation covered by the statute is, "a bogus document **contrived to appear** to be a financial instrument, where there is in fact no such genuine instrument . . ." *Id* at 1067 (emphasis added). Thus the contrivance includes the requirement of the appearance of legitimacy.[1]

The government attempts to find legislative intent for its new version of the statute by stretching the language of the legislative history, as it stretches the language of the statute itself. It leaps from legislative history language

---

[1] *United States v. Balde*, 117 Fed. Appx. 151 (2d Cir. 2004), cited by the government (Gov't. Response at 13), has no application to this case. The Court held there that the defendant's admission to a violation of supervised release for offering a bogus instrument was sufficient to make out the violation, no matter the specific state or federal statute under which he could have been separately criminally prosecuted.

4

to the effect that the statute was enacted "to reach documents not striving to duplicate any existing obligation'", "to close a loophole", and to protect "persons of a rather credulous nature", to its claim that the statute was meant to cover any and all items used or treated as financial obligations, no matter the appearance. Gov't. Response 9-12.

Obviously, these references in the legislative history do not justify such an attribution, and, in fact, it is clear, as the *Howick* Court explained, that the "loophole" to be closed, and the persons to be protected, refer to bogus, but legitimate-seeming, documents not penalized by the counterfeiting statute, and to people who might be fooled by such documents that look like financial instruments. *United States v. Howick, supra* at 1068.

Although the range of genuine financial obligations is "limitless", the unlawful fraudulent ones covered by the statute must, to meet the threshold for prosecution, have features "commonly found in genuine obligations ... [and be] free of disqualifying marks." *Ibid.* The block of black paper in this case is ineligible; there are no commonly found features, and the block shape and blackness of the

5

paper which would require mixture with chemicals and real money in order to transform it, are disqualifying marks.

The government does not address the additional disqualifying factor for prosecution under §514(a)(2) that the block of black paper in this case was supposed to be transformed into United States currency. Section 514(a)(2) was designed to prosecute bogus "nonexistent instruments", "where there is in fact no such genuine instrument." *(United States v. Howick, supra*, at 1067), therefore a prosecution does not ly under §514(a)(2), where in this case the bogus item was supposed to become existent, genuine U.S. currency. The fact that the government does not address the issue, signals that there is no ground for sustaining the prosecution, and it should be dismissed.

POINT II

A HEARING IS NECESSARY ON THE
ADMISSIBILITY OF THE POST-ARREST
STATEMENTS

The government argues about the significance of the timing of defendant's post-arrest statements, but does not contest that he has a right to a hearing on the voluntariness of those statements and on whether they were properly preceded by adequate *Miranda* warnings. Gov't.

Response at 15n3. Thus, the Court should order that a hearing be held, at which time delays and other circumstances of the taking of the statements can be explored and considered on the government's burden to prove voluntariness and compliance with *Miranda v. Arizona*, 384 U.S. 436 (1966). *Colorado v. Connelly*. 479 U.S. 157, 168 (1986).

### POINT III

#### THE IDENTITIES OF THE INFORMANT AND THE UNNAMED COCONSPIRATORS ARE NECESSARY TO PREPARATION OF THE DEFENSE

The government concedes that this Court has the discretion to order the disclosures sought by the defendant in order to prepare for trial (Gov't. Response at 17-18). Thus, for all of the reasons stated in defendant's opening papers, the Court should order the disclosure. There is no prejudice to the government or to the informant who was the key participant-"victim"; the defendant does not know the names and other identifying characteristics of the informant and the unnamed alleged coconspirators; the information is necessary to the investigation of these people for trial preparation on the defenses of entrapment and incredulity of the so-called victim of the block of black paper, which the

7

government argues is a jury question. (Gov't. Response at 13); and delay of disclosure until trial will require continuances in order to carry out the necessary investigation.

The conclusory claim by the government that "the defendants sought out the store owner to defraud" (*Id* at 19), should not preclude defense investigation for evidence that, in fact, the store owner induced the fraud by indicating a willingness to accept any magical, fantastical transformations of things into money. Furthermore, there was no "significant" prior relationship with this man, only brief encounters in his store, hence defendant does not know his identifying characteristics which would permit investigation.

Entrapment and, according to the government, the actual incredulity of the informant, are, indeed, defenses to the government's case in chief, and therefore qualify for disclosure of material necessary to defense preparation under Rule 16. The government's citation to *United States v. Armstrong*, 517 U.S. 456. 462 (1996), is inapposite, because, there, the assertion was that a selective prosecution claim qualified as a "defense" for Rule 16 discovery purposes,

even though it was to be decided by pretrial motion to the Court and required disclosure of government memoranda and work product not admissible at trial.

With regard to the charged, unnamed coconspirators, defendant is not seeking disclosure of government evidence, only the particulars of an indictment which on its face inconsistently charges the involvement of such conspirators, but charges only defendant and his co-defendant with the offering of the block of black paper. Defendant cannot defend when the indictment only hints at a conspiracy of larger scope, but does not provide the particulars which would give notice of the acts with others against which a defense must be prepared.

The case cited by the government, *United States v. Torres*, 901 F.2d 205, 233-34 (2d Cir. 1990), reaffirms this Court's discretion to order disclosure of the identities of unnamed coconspirators. In *Torres*, there was no abuse of discretion in the denial of disclosure because the indictment sufficiently particularized the events with which the defendants were charged, and they had been given voluminous discovery which would inform them of the identities of the coconspirators. Neither condition of the

*Torres* denial of disclosure has occurred here: neither the indictment in this case nor the discovery contains acts or events involving coconspirators other than defendant and his co-defendant.

*United States v. Jimenez,*, 824 F.Supp. 351, 363 (S.D.N.Y. 1993), also cited by the government does not address disclosure of charged, but unnamed coconspirators, and, to the same effect as *Torres, supra*, the discovery satisfactorily apprised the defendants of acts and events that would have involved other people.

### CONCLUSION

FOR THE ABOVE STATED REASONS AND THE
REASONS STATED IN DEFENDANT'S OPENING
PAPERS, HIS MOTIONS SHOULD BE GRANTED

Respectfully submitted,

LAWRENCE MARK STERN
100 Hudson Street, #6A
New York, N.Y. 10013
212-925-6863
Attorney for Defendant
Runey Mah